IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

|  |  |  |
|---|---|---|
| SHERRY LYNN DELINO o/b/o B.J., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:18cv107 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Plaintiff Sherry Lynn Delino's ("Plaintiff") Complaint, ECF No. 4, on behalf of minor child B.J. ("Claimant"), filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security Disability Income ("SSDI") under the Social Security Act ("SSA"). Plaintiff filed a Motion for Summary Judgment, ECF No. 12, and the Commissioner filed a cross-Motion for Summary Judgment and opposition to Plaintiff's Motion for Summary Judgment and supporting memorandum, ECF Nos. 14-15. Plaintiff did not file a reply and the time to do so has expired. As such, the cross-Motions for Summary Judgment, ECF Nos. 12, 14, are now ripe for recommended disposition.

This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on

Assignment of Certain Matters to United States Magistrate Judges. After reviewing the Administrative Record and the briefs submitted by the parties, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 12, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On April 4, 2014, Plaintiff filed an application for SSDI on behalf of Claimant, a child under age eighteen, alleging an onset date of disability of January 1, 2011. R. at 25.[1] Her application was initially denied on July 30, 2014, R. at 57-65, and denied again upon reconsideration on June 17, 2015, R. at 67-79. Plaintiff then requested a hearing which was conducted on March 1, 2017. R. at 45-56. On August 24, 2017, Administrative Law Judge Tom Duann ("ALJ") issued a written decision denying Plaintiff's SSDI application. R. at 25-40. Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision based on new evidence and submitted with her appeal that additional evidence. R. at 17-19, 118-20. On July 19, 2018, the Appeals Council denied Plaintiff's appeal on the grounds that the additional evidence submitted by Plaintiff did not relate to the time period under review by the ALJ, thereby making the ALJ's decision the final decision of the Commissioner. R. at 1-3.

Having exhausted her administrative remedies, on September 11, 2018, Plaintiff filed a Complaint in this Court seeking judicial review of the Commissioner's final decision. ECF No. 4. The Commissioner filed an Answer on November 16, 2018, and the matter was referred to the

---

[1] "R." refers to the certified administrative record that was filed under seal on October 4, 2018 pursuant to Local Civil Rules 5(B) and 7(C)(1).

undersigned U.S. Magistrate Judge ("the undersigned") on November 19, 2018. ECF Nos. 8, 10. Plaintiff then filed her Motion for Summary Judgment on December 14, 2018, ECF No. 12, and the Commissioner filed a cross-Motion for Summary Judgment, a Memorandum in Support, and a *Roseboro* Notice on January 11, 2019, ECF Nos. 14-17. Responsively, on January 24, 2019, Plaintiff filed an opposition to the Commissioner's Motion for Summary Judgment. ECF No. 18. As such, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Claimant B.J. was born on July 14, 2008, and was two years old at the time of his alleged onset date of disability of January 1, 2011, making him a "younger individual" under the SSA's regulations. *See* R. at 28; *see also* 20 C.F.R. §416.963(c) (defining anyone under the age of fifty as a "younger person."). Plaintiff is Claimant's grandmother and filed an application for SSDI on Claimant's behalf. *See* R. at 25, 30. When Plaintiff filed the application for SSDI on April 4, 2014, Claimant was five years old. R. at 121. On March 1, 2017, Plaintiff appeared *pro se* by video and testified before the ALJ at the administrative hearing. R. at 57-65.

The record included the following factual background for the ALJ to review:

### A. Relevant Medical Records

In July 2014, Claimant was evaluated by Eva K. Anderson, Ph.D., in connection with Plaintiff's application for disability benefits. R. at 283-85. Dr. Anderson's evaluation indicated that Claimant's speech was difficult to understand, but noted that he was physically well developed, neatly dressed, and "pleasant, polite and cooperative" during the examination. R. at 284. Dr. Anderson determined that Claimant was mildly impaired in attention and concentration, mildly impaired in practical reasoning and self-help skills, and markedly impaired in communication based on his difficulty articulating words. R. at 285. Therefore, Dr. Anderson

3

assessed Claimant with borderline intellectual disability, Attention Deficit Hyperactivity Disorder ("ADHD"), and communication disorder. R. at 284.

In August 2014, Plaintiff reported to Claimant's pediatrician, Dr. Mohan Thummalapalli with Chesapeake Pediatrics, that Claimant was "acting out" and engaging in inappropriate behavior at home. R. at 302. During that visit, Dr. Thummalapalli noted that Claimant displayed "mild symptoms of hyperactivity and restlessness with impulsive behaviors." R. at 302. In October 2014, Dr. Thummalapalli reported that medication was controlling Claimant's ADHD symptoms and that Claimant had no apparent side effects to the medication other than mild appetite suppression. R. at 295. Dr. Thummalapalli also noted that Claimant had no reported behavioral problems at school and was doing well academically. R. at 295. However, Plaintiff expressed to Dr. Thummalapalli that Claimant had exhibited some anger at home. R. at 295. In January 2015, Dr. Thummalapalli again reported that "[m]edication controls patient's core ADHD symptoms," that Claimant "[h]as not had any behavior problems," and that he was "doing well academically." R. at 292. In February 2017, Dr. Thummalapalli again noted that Claimant's ADHD symptoms were well controlled by his current medication and that he was performing well academically. R. at 318.

In June 2015, a speech pathologist, Robert Scherr, Ed.D., noted that Claimant's cooperation was very good, his attention and task persistence was good, he followed direction very well, and rapport was easily established. R. at 314. Dr. Scherr performed several tests and determined that Claimant's articulation was average, his receptive vocabulary was average, his expressive vocabulary was below average, his listening comprehension was average, and his oral expression was average. R. at 318.

4

**B. Relevant Academic Records**

In December 2013, Claimant's kindergarten teacher, Ms. Meaghan Gray, reported that he was a "sweet child" but that he had a "delay when it comes to learning new material" and tended to lose focus. R. at 135. She also noted that Claimant had a "slight problem orally speaking." R. at 140. However, Ms. Gray reported that, despite Claimant's language deficits occasionally making it difficult for him to express his thoughts, Claimant was able to play cooperatively with his peers, make and maintain friendships, express anger appropriately, and follow rules when necessary. R. at 142.

Claimant was required to repeat kindergarten during the 2014-2015 school year. R. at 167. During his second year of kindergarten, Claimant's academic performance improved significantly. R. at 202-09. His teacher, Ms. Amanda Avens, reported Claimant had no problems acquiring or using information, attending and completing tasks, or interacting and relating with others. R. at 203-07. Ms. Avens noted that Claimant was "a very sweet boy who strives to do his best in all he does in school" and that he made "friends easily and is kind to all his peers." R. at 209. Ms. Avens also noted that Claimant was "an outstanding role model for others and takes correction well." R. at 209.

Claimant's second grade report card from the 2016-2017 academic year also reflected "a lot of growth" in behavior in the second quarter. R at 262. Claimant's second grade teacher reported that he was still reading below grade level, but that he was considered an "engaged" reader. R. at 262, 264. Claimant's school further noted that while Claimant's attention and focus occasionally "waver," he was generally a happy student and a hard worker. R. at 264.

Claimant has benefitted from an Individualized Learning Plan ("ILP"). R. at 219-244. Claimant's "educational disabilities" were for developmental delays, specifically preschool skills,

speech articulation, and expressive language. R. at 166-68. Claimant received 225 minutes a week of special instruction in a regular class and 225 minutes a week in a resource room. R. at 166-68. He also received thirty minutes of speech language therapy on a six-day cycle. R. at 313-18, 201-09. Claimant's IEP was terminated on June 1, 2015, because he had made progress. It was then suggested that he be placed in a reading intervention group for the next school year. R. at 201-09.

## C. Records Review by State Agency Experts

On July 30, 2014, Dr. Wild, a State Agency psychiatrist, reviewed Claimant's records, and concluded that Claimant had a severe speech and language impairment and suffered from ADHD. R. at 61. Dr. Wild found that Claimant had a less than marked impairment in acquiring and using information, attending and completing tasks, and caring for himself. R. at 62. Dr. Wild also determined that Claimant had no limitation in moving about and manipulating objects or in physical health and well-being. R. at 62. Dr. Wild found a marked limitation in only one of six domain evaluations - interacting and relating with others. R. at 62.

On June 17, 2015, Dr. Sarno, a State Agency psychiatrist, also reviewed Claimant's records. R. at 67-79. Plaintiff supplied information to Dr. Sarno, including a report that Claimant's behavior had worsened, that he often did not comprehend what he was told, and that he punches himself in the head, kicks the walls due to frustration, and wipes feces on himself. R. at 68. Dr. Sarno concluded that Claimant suffered from ADHD, Speech and Language Impairment, and Borderline Intellectual Functioning ("BIF"). R. at 74. Dr. Sarno's findings mirrored that of Dr. Wild in all six domain evaluations. R. at 74-75.

## D. Relevant Testimony from the ALJ Hearing

At the March 1, 2017, administrative hearing, Plaintiff testified that Claimant has always had a speech impediment and had tongue surgery at an early age in an attempt to prove his speech.

R. at 50.  Plaintiff stated that Claimant does not comprehend very well, and that he is reliant on others to get ready each day.  R. at 50-51.  Plaintiff noted that Claimant sometimes defecates on himself.  R. at 51.  Plaintiff further testified that Claimant has faced difficulties academically, was retained in kindergarten and subsequently attended summer school.  R. at 51.  Plaintiff asserted that she does not believe special education resources have helped Claimant.  R. at 52.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ uses a three-step process to evaluate the SSDI claims of minors.  20 C.F.R. § 416.924.  First, the ALJ determines whether the claimant has engaged in "substantial gainful activity" ("SGA").  20 C.F.R. § 416.924(a).  If the ALJ concludes that the claimant has engaged in SGA, he is not disabled regardless of his medical conditions(s), age, education, or work experience.  20 C.F.R. § 416.924(a).  If the ALJ determines that the claimant has not engaged in SGA, the ALJ must then consider whether the claimant has "a severe impairment . . . or combination or impairments which significantly limit[s] [his] physical or mental ability to do basic work activities."  20 C.F.R. § 416.924(c).  To qualify as a severe impairment that entitles a claimant to benefits under the SSA, it must cause more than a minimal effect on one's ability to function.  *Id.*  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  20 C.F.R. §416.924(a).  If the claimant suffers from a severe impairment or combination of impairments, the ALJ must lastly determine whether the claimant's impairment meets, medically equals, or functionally equals an impairment listed in Appendix 1, Part 404, Subpart P, and lasts, or is expected to last, for twelve months or result in death.  20 C.F.R. § 416.926a(a).  If the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of, or functionally equals, the listings or the impairment has

lasted or is expected to last for less than a continuous period of at least 12 months, the claimant is found not disabled.  20 C.F.R. § 416.924(d).

In assessing the functional limitations caused by the impairments, the ALJ examines a claimant's limitations in six areas of development and functioning to determine whether he has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  A claimant has a "marked limitation" in a domain when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2).  A "marked" limitation is further defined as a limitation that is "more than moderate" but "less than extreme."  R. at 27.  A claimant has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.92a(e)(3); R. at 28.

The six relevant domains of functioning include: (1) acquiring or using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(a)(1).

The ALJ made the following findings of fact and conclusions of law: First, the ALJ noted that Claimant was born on July 14, 2008, and was therefore an "older infant" on April 4, 2014, the date the application was filed, and was a preschooler at the time of the ALJ's decision.  20 C.F.R. § 416.926a(g)(2); R. at 28.  Second, the ALJ determined that Claimant had not engaged in substantial gainful activity since the application date in 2014.  20 C.F.R. 416.924(b) and 416.971 *et seq*; R. at 28.  Third, the ALJ determined that Claimant had the following severe impairments: ADHD, BIF, Reading, and Speech Disorder.  20 C.F.R. 416.924(c).  R. at 28.  Fourth, the ALJ determined that the evidence failed to show that Claimant had "an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt P, App. 1." R. at 29 (citing 20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

Fifth, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equals the severity of the listings.  20 C.F.R. § 416.924(d) and 416.926(a); R. at 29.  In order to make this determination, the ALJ considered "all relevant evidence" in the case record, including objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; Claimant's statements and statements from Claimant's parent(s) or caregivers; and any other relevant evidence in the case record, including evidence of how Claimant has functioned over time at home, at school, and in the community.  R. at 29.

The ALJ performed a two-step process to evaluate Claimant's symptoms: determining (1) whether there is an underlying medically determinable physical or mental impairment (whether "an impairment . . . can be shown by medically acceptable clinical and laboratory diagnostic techniques"), and (2) the level of intensity, persistence, and limiting effects of claimant's symptoms.  R. at 29-30.  If the statements regarding the intensity, persistence, or functionally limiting effects of the impairments are not substantiated by objective medical evidence, the ALJ must "consider other evidence in the record to determine the claimant's functional limitations." R. at 30.

The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  R. at 30.  However, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely consistent with Claimant's medical records and other evidence in the record.  R. at 30. Thus, due to the inconsistencies between Plaintiff's claims regarding Claimant's behavior and the

reports of Claimant's teachers and speech pathologist, the ALJ afforded Plaintiff's statements only "some credence." R. at 31.

The ALJ also considered the opinion evidence of Dr. Anderson, the State Agency mental health experts, and Claimant's teachers, Ms. Avens and Ms. Gray. R. at 30-31. The ALJ accorded partial weight to the opinion of Dr. Anderson because more recent evidence showed that Claimant's communication skills have improved, and he was functioning at a higher level than at the time of the initial assessment. R. at 31. The ALJ afforded great weight to the opinions of the State Agency mental health experts because they provided detailed explanations of the evidence they used in reaching their opinions. R. at 31; *See* R. at 57-65; 67-79. The statements of Ms. Avens were given greater weight than those of Ms. Gray, as they were most consistent with the evidence of the record. R. at 31.

In terms of the six functional equivalence domains, the ALJ determined the following regarding the limitations caused by Claimant's impairments:

*1. Acquiring and Using Information*

The ALJ determined that Claimant had less than marked limitation in acquiring and using information. R. at 33. Acquiring and using information concerns how well a child is able to acquire and learn information and how well a child uses the information he has learned. R. at 32. This domain involves how well children are able to perceive, think about, remember, and use information in all settings, including daily activities at home, at school, and in the community. R. at 32. *See* 20 C.F.R. § 416.926a(g) and SSR 09-03p. Preschool children (ages three to six) without impairments should be able to perform the following examples of activities: (1) listening to stories, (2) rhyming words, (3) matching letters, (4) counting, (5) sorting shapes, (6) building with blocks, (7) painting, (8) coloring, (9) copying shapes, (10) using scissors, (11) using words to ask

questions, (12) give answers, (13) follow directions, (14) describe things, (15) explain what they mean, and (16) tell stories that allows them to acquire and share knowledge and experience of the world around them. 20 C.F.R. § 416.926a(g)(2)(iii). School-age children (ages six to twelve) without an impairment should be able to "learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv).

The ALJ's determination that Claimant had a less than marked limitation in this domain was based on the following information. R. at 33. Ms. Gray noted that Claimant had only a slight problem speaking orally, but that he struggled with reading and comprehending. R. at 33. Due to these difficulties, Claimant had to repeat kindergarten. R. at 33. According to Ms. Avens, Claimant was on level in math and written language and there were no problems observed in Claimant's ability to acquire and use information. R at 33. Claimant benefitted from IEP through June 2015. R. at 33. In February 2017, a school counselor noted that Claimant was a "hard worker" in school. R. at 33. At the time of the ALJ's decision, Claimant's "School Pace" reading achievement data indicated that he was considered an "engaged" reader on target level four. R. at 33. Both state mental health experts assessed a less than marked limitation within this domain. R. at 33. Based on the evidence, the ALJ determined that Claimant had a less than marked limitation in acquiring and using information. R. at 33.

   *2. Attending and Completing Tasks*

The ALJ determined that Claimant had a less than marked limitation in attending and completing tasks. R. at 34. This domain considers how well a child is able to focus and maintain attention, and how well the child is able to begin, carry through, and finish activities, including the mental pace at which is able to perform activities and the ease with which he is able to change activities. R. at 33. The "attending and completing tasks" domain also includes an analysis of a

child's ability to prioritize competing tasks and manage his time.  R at 33; *see* 20 C.F.R. §416.926a(h); SSR 09-04p.  Preschool children without an impairment "should be able to pay attention . . . when spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects." 20 C.F.R. § 416.926a(h)(2)(iii).  This includes dressing oneself, feeding oneself, or putting away toys.  *Id.* School-age children without an impairment in this domain should be able to: (1) follow directions, (2) remember and organize one's school materials, (3) complete classroom and homework assignments, (4) concentrate on details, (5) not make careless mistakes in one's work, (6) change one's activities or routines without distracting oneself or others, (7) stay on task and in place when appropriate, (8) sustain one's attention well enough to participate in group sports, (9) read by oneself, (10) complete family chores, and (11) be able to complete a transition task without extra reminders and accommodation.  20 C.F.R. § 416.926a(h)(2)(iv).

The ALJ's determination in this domain was based on the following evidence.  Plaintiff stated that he did not focus well.  R. at 34.  While Ms. Gray noted obvious problems with Claimant's ability to carry out single- and multiple-step instructions and work at a reasonable pace, Ms. Avens did not observe any problems in Claimant's ability to attend and complete tasks.  R. at 34.  In February 2017, Claimant's school counselor reported that he struggled with reading and math and at times became frustrated and required encouragement in order to finish a task.  R. at 34.  However, the ALJ also relied on the opinions of both State Agency mental health experts who reviewed the evidence of Ms. Gray, Ms. Avens, Plaintiff, and Claimant's school counselor and determined Claimant had a less than marked limitation in attending and completing tasks.  R. at 62, 74-75.  After considering this evidence, the ALJ concluded that Claimant had a less than marked limitation in this domain.  R. at 34.

12

### 3. Interacting and Relating to Others

The ALJ determined that Claimant had a less than marked limitation in this domain. R. at 35. "Interacting and relating to others" includes consideration of how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. R. at 34. This domain includes consideration of all aspects of social interaction at home, at school, and in the community. R. at 34; *see* 20 C.F.R. § 416.926a(i); SSR 09-05p. Preschool children without an impairment should be able to socialize with children and adults, begin to develop friendships, express oneself with words, share, show affection, and offer help. 20 C.F.R. § 416.926(a)(i)(2)(iii). A school-age child without an impairment should be able to develop more lasting friendships with children of the same age. 20 C.F.R. § 416.926a(i)(2)(iv).

In making their determination on this domain, the ALJ considered the following evidence: (1) Plaintiff's testimony at the hearing that Claimant's disability affects his ability to help himself and cooperate with others in taking care of personal needs; that Claimant defecates on himself and smears it on himself as well as on walls, and that Claimant is aggressive, out of control, and bangs his head on the wall. R. at 35. (2) Ms. Gray's academic records indicating Claimant's speech made it difficult for him to express his thoughts; that he would get overly excited and need to be reminded to wait his turn in a large group setting; but that Claimant had only a slight problem in this domain. R. at 35. (3) A questionnaire completed by Ms. Avens in June 2015, indicating Claimant did not have problems in this domain and characterizing Claimant as a "sweet boy" who made friends easily, was kind to all his peers, was an outstanding role model for others and took correction well. R. at 36. (4) Claimant's speech pathology records from May 2014 indicating Claimant had significant articulation errors that affected his ability to communicate his thoughts

and ideas effectively in the classroom.  R. at 36.  (5) Dr. Anderson's July 2014 report indicating Claimant was "markedly impaired in communication" and noting his articulation disorder was so severe that it interfered with communication and put him at risk for problems in phonological awareness, reading, and spelling.  R. at 36.  (6) Subsequent testing in June 2015 showing that Claimant's articulation, receptive vocabulary, listening comprehension, and oral expression were average, and his expressive vocabulary was below average; his oral mechanism, voice, and fluency were within normal limits; his intelligibility was between 60-70%, but normative data for his age (five years eleven months) indicated that his intelligibility should be 100%.  R. at 36.  Finally, related to the June 2015 testing, a speech pathologist's conclusions that Claimant had good functional communication skills, as he was able to ask and answer questions, follow classroom directions, and demonstrate appropriate turn taking skills; and based on Claimant's medical records he had an average to excellent relationship with his parents, siblings, and peers.  R. at 36.

The ALJ noted that inconsistencies existed between Claimant's reported behaviors at school and with his teachers and doctors as compared with Plaintiff's reports of what was happening at home and that these inconsistencies "tend[ed] to erode some of [Plaintiff's] allegations."  R. at 36.  Further, the ALJ stated that, because Claimant had shown significant improvement in his speech since the initial denial of benefits, the ALJ did not agree with the marked limitation indicated in this area by the State Agency consultants.  R. at 36.  After considering all the evidence presented, the ALJ concluded that Claimant's limitation in this domain were less than marked.  R. at 36.

### 4. Moving About and Manipulating Objects

The ALJ found that Claimant had no limitation in moving about and manipulating objects. R. at 37.  This domain includes how well a child is able to move his body and manipulate objects

in a way that requires gross motor skills, fine motor skills, or a combination of both. R. at 36. A preschool child without an impairment should be able to walk and run with ease. 20 C.F.R. § 416.926a(i)(2)(iii). School-age children without impairments should "move at an efficient pace about one's school, home, and neighborhood." 20 C.F.R. § 416.926a(i)(2)(iv).

Plaintiff reported no limitations in this area. R. at 37. Two of Claimant's teachers assessed no limitation in this area in their evaluations. R. at 37. The State Agency mental health experts also reported that Claimant had no limitations in this area. R. at 37. Additionally, there were no physical issues noted in the consultative examination performed on June 2, 2015. R. at 37. Therefore, the ALJ concluded that the Claimant had no limitation in this domain. R. at 37.

### 5. Caring for Yourself

The ALJ concluded that Claimant had a less than marked limitation in his ability to care for himself. R. a 38. This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in an appropriate way and how well a child copes with stress and changes in the environment. R. at 37. This includes how well a child takes care of his own health, possessions, and living area. R. at 38. Preschool children with no impairments in this domain should "want to take care of many of [their] physical needs by [their] self (e.g., putting on your shoes, getting a snack), and also want to try doing some things that [they] cannot do fully." 20 C.F.R. § 416.926a(k)(2). School-age children without an impairment in this domain should be independent in most daily activities but may need reminders to complete these activities. 20 C.F.R. § 416.926a(k)(2)(iv).

The ALJ relied on evidence from several parties in making their determination in this domain. The State Agency mental health consultant assessed that Claimant had less than marked limitations in this domain. R. at 38. Ms. Gray stated that Claimant could get very emotional or

upset at times but found no more than slight problems in this domain. R. at 38. No problems were observed by Ms. Avens in this domain. R. at 38. On the other hand, Plaintiff testified that Claimant defecates on himself and smears it on walls as well as himself. R. at 38. After considering all of the evidence, the ALJ concluded that Claimant had a less than marked limitation in his ability to care for himself. R. at 39.

### 6. Health and Physical Well-Being

Finally, the ALJ concluded that Claimant had no limitation in health and physical well-being, as there is no allegation of the claimant having difficulties in this area within the medical evidence of record. R. at 39. This domain considers the cumulative physical effects of physical and mental impairments on a child's health and functioning. 20 C.F.R. § 416.926a(l). This domain assesses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and physical well-being. R. at 39. "When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause 'extreme' limitation in your functioning, your will generally have an impairment(s) that 'meets' or 'medically equals' a listing." 20 C.F.R. § 416.926a(l).

The ALJ noted that while Claimant had been diagnosed with ADHD, BIF, a reading disorder, and a speech disorder, and must continue to take his prescribed medications, there was no evidence of any severe symptoms in this area. R. at 39. Claimant was notably well-nourished and groomed. R. at 39.

From this testimony and his evaluation of Claimant's medical records, the ALJ concluded that, "the evidence does not support a finding of disability" as "his school record in evidence reveals little in the way of significant problems," and "Claimant's records of mental health counseling reveal mostly that no clinically significant findings were noted on examination." R. at

16

39. The ALJ noted that while Plaintiff reported more severe problems at home, these reports were unsubstantiated by other sources. R. at 39. For these reasons, the ALJ determined that Claimant had not been disabled, as defined by the SSA, since April 4, 2014, the date the application was filed. R. at 40; *see* 20 C.F.R. § 416.924(a).

## IV. POST-ALJ DECISION BACKGROUND

Plaintiff appealed the ALJ's decision of August 24, 2017, on the grounds that the ALJ did not consider new evidence obtained post-hearing and submitted for consideration. R. at 118-20. Plaintiff submitted three additional pieces of evidence on behalf of Claimant with her appeal to the Appeals Council that post-dated the ALJ's decision. R. at 7-19. These documents included a psychological report prepared by Genesis Counseling Center (hereinafter "Genesis Report") on October 27, 2017, meeting minutes from a November 17, 2017, meeting with Claimant's school, and one of Claimant's third grade report cards.[2] R. at 7-19.

The Genesis Report stated that Claimant's ADHD is "considered managed on medication." R. at 12. However, Claimant was tested with respect to adaptive behaviors and found to "function slightly below average for his age which is likely associated with Autism Spectrum concerns." R. at 13. Thus, based on the information provided by Plaintiff as well as an observation-style assessment of Claimant, the Genesis Report concluded that Claimant exhibited symptoms falling on the Autism Spectrum Disorder ("ASD"). R. at 14. While Claimant was verbal throughout the examination and used "complex sentences in a largely correct fashion," his reported deficits in social communication and social interactions contributed to the ultimate determination that he is a Level 1 on the ASD, thus indicating a high level of functioning. R. at 14, 17.

---

[2] Because Plaintiff does not contend that the ALJ should have considered the meeting minutes or Claimant's report card, *see* R. at 118-20, the Court need not review these documents in detail. The Court shall, however, review the Genesis Report, which forms the basis of Plaintiff's claim.

17

On July 19, 2018, after reviewing the additional evidence submitted by Plaintiff, the Appeals Council denied review, and determined that the additional evidence submitted by Plaintiff did not relate to the time period under review by the ALJ. R. at 1-3. The Appeals Council's refusal to review the ALJ's decision makes the ALJ's decision the final decision of the Commissioner. R. at 1.

## V. STANDARD OF REVIEW

The SSA limits the Court's review of the Commissioner's final decision to determining whether substantial evidence supports the decision in the record and whether the ALJ applied the correct legal standard in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 1996) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Additionally, this Court may not consider evidence that was not

before the Commissioner at the time of the decision. *See Miller v. Barnhart*¸ 64 F. App'x 858, 859 (4th Cir. 2003) (citing *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996)); *see also United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963) ("the reviewing function is one ordinarily limited to consideration of the decision of the agency or court below and of the evidence on which it was based.").

## VI. ANALYSIS

In her Motion for Summary Judgment, Plaintiff argues that the Commissioner should have but failed to consider the Genesis Report dated October 27, 2017, which was submitted after the ALJ's Decision. ECF No. 12. Plaintiff does not contend that the ALJ should have considered the other additional pieces of evidence she submitted, including the meeting minutes from a November 17, 2017, meeting with Claimant's school, and one of Claimant's third grade report cards, as noted in the Commissioner's brief. ECF No. 15 at 6. While Plaintiff does not clearly articulate a legal argument as to this post-decision evidence, a *pro se* litigant is "entitled to a liberal construction of her pleadings." *Miller*, 64 F. App'x at 859 (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also L.H. v. Colvin*, No. 2:15cv382, 2016 WL 3883030, at *9 (E.D. Va. June 21, 2016). As such, this Court shall construe Plaintiff's claims liberally, as appearing to seek remand based on the Commissioner's failure to consider "new evidence" submitted to the Appeals Council.

More specifically, the Court construes Plaintiff's Motion for Summary Judgment as making two related arguments: (1) The ALJ should have considered the testing evidence submitted after the ALJ's decision and, therefore, the Appeals Council erred when it declined to reconsider the ALJ's decision based on that new evidence; (2) The ALJ's decision is not supported by substantial evidence, as the ALJ's decision did not account for medical evidence essential to Plaintiff's claim submitted after the ALJ's decision. ECF No. 12.

In response to Plaintiff's arguments, the Commissioner contends that the Appeals Council's decision not to consider the new evidence submitted by Plaintiff was appropriate. ECF No. 15 at 11. First, the Commissioner contends that the ALJ properly considered the record that was before him and notes that Plaintiff does not argue that the ALJ committed any legal or factual error in his analysis of the record before him. *Id.* at 1. Furthermore, the Commissioner argues that the Appeals Council acted properly in denying reconsideration of the ALJ's decision based on the post-decision evidence submitted by Plaintiff, as this evidence was not material, was not related to the period on or before the date of the hearing decision, and the new evidence would not change the outcome of the opinion.[3] *Id.* at 8-10. The Commissioner noted that the ALJ rendered his decision on August 24, 2017, and the Genesis Report submitted by Plaintiff was not completed until October 27, 2017, and argued that based on the date of the Genesis Report, this additional evidence was unrelated to the period on or before the date of the hearing decision rendered.[4] *Id.* at 9-10. The Commissioner's argument appears to presume that this Court is tasked with reviewing the Appeals Council's choice to decline reconsideration of the ALJ's decision based on new evidence. However, as explained below, the Court may only review the final decision of the Commissioner. In this case, the final decision of the Commissioner is the ALJ's decision.

## A. The Court May Only Review the ALJ's Decision, and May Not Review the Appeals Council's Choice to Decline Review Based on New Evidence

The Court reviews the final decision of the Commissioner to determine whether the ALJ's Decision is supported by substantial evidence. The Appeals Council will only grant a request for

---

[3] In response to Defendant's argument, Plaintiff asserts that ASD is not a "new impairment" for Claimant, but rather "simply a summation of his previously diagnosed ADHD, borderline intellectual disorder, reading and speech disorder." ECF No. 18 at 2. Thus, Plaintiff contends that the Genesis Report was "merely a formality" in arriving at a full diagnosis. *Id.*

[4] In response, Plaintiff contends that the Genesis Report was only delayed because child psychological services are in high demand in her area, government healthcare requires several intermediary steps in order these appointments, and these appointments require pre-authorizations that can cause significant delays. *Id.* at 3.

review of an ALJ's decision when the information is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 46.1470(a)(5); *Wilkins v. Secretary, Dept. of Health and Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is considered "new" only if it is not "duplicative or cumulative." *Wilkins*, 953 F.2d at 96. Furthermore, evidence is considered "material" only if there the Commissioner's "decision might reasonably have been different had the new evidence been before her." *Miller*, 64 F. App'x at 859-60 (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)).

Where the Appeals Council considers new evidence, but denies review, the Fourth Circuit requires that the reviewing court consider the record as a whole, including the new evidence, to determine whether the Decision of the ALJ is supported by substantial evidence. *Wilkins*, 953 F.2d at 96; *Bowles v. Barnhardt*, 392 F. Supp. 2d 738, 742 (W.D. Va. 2005). Notably, the Court does not review the Appeals Council's choice to decline to review the ALJ's decision. *See Gainforth v. Colin*, 2016 U.S. Dist. LEXIS 85388, at *27-28 ("[T]he Court here is not evaluating the Appeals Council's denial of review, or indeed, any action taken by the Appeals Council . . . this Court's role in this case is to evaluate the decision of the ALJ because the Appeals Council denied review.") (quoting *Meyers v. Astrue*, 622 F.3d 700, 705 (4th Cir. 2011), which explains the Appeals Council's denial of review is not a decision of the Commissioner requiring finding of fact and reasons for the decision). Rather, this Court is tasked with evaluating whether the ALJ's decision is supported by substantial evidence in light of the additional evidence submitted. Therefore, the Court shall first consider whether the ALJ's decision was supported by substantial evidence based only on the record before him. The Court shall then consider whether, in light of

the supplementary evidence submitted by Plaintiff, the ALJ's decision is supported by substantial evidence.

## B. Based on the Record Available at the Time of His Decision, the ALJ's Decision is Supported by Substantial Evidence

The ALJ evaluated Claimant under the following six functional equivalence domains to assess the functional limitations caused by Claimant's impairments pursuant to 20 C.F.R. § 416.926a(a)(1):

(1) acquiring or using information;
(2) attending and completing tasks;
(3) interacting and relating with others;
(4) moving about and manipulating objects;
(5) caring for yourself; and
(6) health and physical well-being.

20 C.F.R. § 416.926a(a)(1). The ALJ considered both the objective clinical findings and Plaintiff's characterization of Claimant's behavior, but observed that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [Claimant's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 30. As such, the ALJ gave Plaintiff's reports of Claimant's behavior only "some credence." R. at 31.

Based on the evidence before the ALJ, the Court determines that there was substantial evidence to support the ALJ's decision. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642.

*1. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in acquiring and using information*

The ALJ determined that Claimant had a less than marked limitation in acquiring and using information. R. at 33. Preschool children without impairments should be able to perform the following examples of activities: (1) listening to stories, (2) rhyming words, (3) matching letters,

(4) counting, (5) sorting shapes, (6) building with blocks, (7) painting, (8) coloring, (9) copying shapes, (10) using scissors, (11) using words to ask questions, (12) giving answers, (13) following directions, (14) describing things, (15) explaining what they mean, and (16) telling stories that allows them to acquire and share knowledge and experience of the world around them. 20 C.F.R. § 416.926a(g)(2)(iii). School-age children without an impairment should be able to "learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv).

Here, Ms. Gray noted that Claimant had only a slight problem speaking orally, but that he struggled with reading and comprehending. R. at 140. Due to these difficulties, Claimant had to repeat kindergarten. According to Ms. Avens, Claimant was on level in math and written language and there were no problems observed in Claimant's ability to acquire and use information. R. at 203. Claimant benefitted from an IEP through June 1, 2015. R. at 202. In February 2017, a school counselor noted that Claimant was a "hard worker" in school. R. at 264. At the time of the ALJ's decision, Claimant's "School Pace" reading achievement data indicated that he was considered an "engaged" reader on target level four. R. at 264. Both state mental health experts assessed a less than marked limitation within this domain. R. at 62, 74. Therefore, substantial evidence supports the ALJ's determination that Claimant experienced less than marked limitations in this domain.

### 2. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in attending and completing tasks

The ALJ determined that Claimant had a less than marked limitation in attending and completing tasks. R. at 34. Preschool children without an impairment "should be able to pay attention . . . when spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects." 20 C.F.R. § 416.926a(h)(2)(iii). This includes dressing oneself, feeding oneself, or putting away toys. *Id.* School-age children without an impairment in this domain should be able to: (1) follow directions,

(2) remember and organize one's school materials, (3) complete classroom and homework assignments, (4) concentrate on details, (5) not make careless mistakes in one's own work, (6) change one's activities or routines without distracting oneself or others, (7) stay on task and in place when appropriate, (8) sustain one's attention well enough to participate in group sports, (9) read by oneself, (10) complete family chores, and (11) be able to complete a transition task without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

Here, Plaintiff stated that Claimant does not focus well. R. at 184, 199. While Ms. Gray noted obvious problems with Claimant's ability to carry out single- and multiple-step instructions and work at a reasonable pace, Ms. Avens did not observe any problems in Claimant's ability to attend and complete tasks. R. at 141, 204. In February 2017, Claimant's school counselor reported that he struggled with reading and math and at times became frustrated and required encouragement in order to finish a task. R. at 264. Following a review of this evidence, both State Agency mental health experts concluded that Claimant had a less than marked limitation in attending and completing tasks. R. at 62, 74-75. As such, substantial evidence supports the ALJ's determination that Claimant experienced less than marked limitations in this domain.

### 3. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in interacting and relating with others

The ALJ determined that Claimant had a less than marked limitation in interacting and relating with others. R. at 35. Preschool children without an impairment should be able to socialize with children and adults, begin to develop friendships, express oneself with words, share, show affection, and offer help. 20 C.F.R. § 416.926(a)(i)(2)(iii). A school-age child without an impairment should be able to develop more lasting friendships with children of the same age. 20 C.F.R. § 416.926a(i)(2)(iv).

24

Here, Plaintiff testified at the ALJ hearing that Claimant's disability affects his ability to help himself and cooperate with others in taking care of personal needs. R. at 50, 193. Plaintiff further testified that Claimant defecates on himself and smears it on himself and on walls. R. at 51, 199. Plaintiff reported that Claimant is aggressive and out of control and that he bangs his head on the wall. R. at 186, 188-89. Ms. Gray stated that Claimant's speech made it difficult for him to express his thoughts and that he would get overly excited and need to be reminded to wait his turn in a large group setting, but nonetheless, she noted only slight problems in this domain. R. at 142. According to a questionnaire completed by Ms. Avens in June 2015, Claimant did not have problems in this domain. R. at 205. She stated that Claimant was a "sweet boy" and that he made friends easily and was kind to all his peers. R. at 209. She further noted that Claimant was an outstanding role model for others and took correction well. R. at 209.

Claimant's speech pathology records from May 2014 indicate that Claimant had significant articulation errors that affected his ability to communicate his thoughts and ideas effectively in the classroom. R. at 165. In July 2014, Dr. Anderson indicated that Claimant was "markedly impaired in communication" and stated that his articulation disorder was so severe that it interfered with communication and put him at risk for problems in phonological awareness, reading and spelling. R. at 285. However, subsequent testing in June 2015 showed that Claimant's articulation, receptive vocabulary, listening comprehension, and oral expression were average, while his expressive vocabulary was below average. R. at 318. His oral mechanism, voice, and fluency were all found to be within normal limits. R. at 318. Claimant's intelligibility was judged to be 60-70%, while normative data for his age (5 years 11 months) indicated that his intelligibility should be 100%. R. at 318. A speech pathologist indicated that Claimant had good functional communication skills, as he was able to ask and answer questions, follow classroom directions,

and demonstrate appropriate turn taking skills.  R. at 281.  Medical records indicate that Claimant had an average to excellent relationship with his parents, siblings, and peers.  R. at 321, 324, 326, 328, 330.

The ALJ noted that the inconsistencies that exist between Claimant's reported behaviors at school and with his teachers and doctors and Plaintiff's reports of what was happening at home "tend to erode some of [Plaintiff's] allegations." R. at 36.  Further, the ALJ stated that, because Claimant has shown significant improvement in his speech since the DDS determination, the ALJ did not agree with the marked limitation indicated in this area by the State Agency consultants.  R. at 36.  The ALJ also noted that, in evaluating the discrepancy between the observations of Plaintiff and Ms. Avens, recent treatment records from Chesapeake Pediatrics support the finding that Claimant experienced a less than marked limitation in this area.  R. at 36, 321.  As such, substantial evidence supports the ALJ's determination.

### 4. Substantial evidence supports the ALJ's determination that Claimant had no limitation in moving about and manipulating objects

The ALJ determined that Claimant had no limitation in moving about and manipulating objects.  R. at 37.  A preschool child without an impairment should be able to walk and run with ease.  20 C.F.R. § 416.926a(i)(2)(iii).  School-age children without impairments should "move at an efficient pace about one's school, home, and neighborhood."  20 C.F.R. §416.926a(i)(2)(iv).

Here, Plaintiff reported no limitations in this area and two of Claimant's teachers assessed no limitation in this area in their evaluations.  R. at 143, 206.  The State Agency mental health experts also reported that Claimant had no limitations in this area.  R. at 62, 75.  Additionally, there were no physical issues noted in the consultative examination performed on June 2, 2015. R. at 313-18.  As such, substantial evidence supports the ALJ's decision finding no limitation in Plaintiff's ability in moving about and manipulating objects.

*5. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in caring for himself*

The ALJ determined that Claimant had a less than marked limitation in his ability to care for himself. R. at 38. Preschool children with no impairments in this domain should "want to take care of many of [their] physical needs by [their] self (*e.g.*, putting on your shoes, getting a snack), and also want to try doing some things that [they] cannot do fully." 20 C.F.R. § 416.926a(k)(2). School-age children without an impairment in this domain should be independent in most daily activities but may need reminders to complete these activities. 20 C.F.R. § 416.926a(k)(2)(iv).

Here, while Plaintiff reported that Claimant defecates on himself and smears it on walls as well as himself, Plaintiff's reports are unsubstantiated by Claimant's academic and medical records. R. at 51, 199. The State Agency mental health consultant assessed that Claimant had less than marked limitations in this domain. R. at 62, 75. Ms. Gray stated that Claimant could get very emotional or upset at times but found no more than slight problems in Claimant's ability to care for himself. R. at 144. No problems in Claimant's ability to care for himself were observed by Ms. Avens in this domain. R. at 207. In light of all the evidence considered by the ALJ and the weight given to each statement, the ALJ's determination that Claimant had a less than marked limitation in caring for himself is supported by substantial evidence.

*6. Substantial evidence supports the ALJ's determination that Claimant had no limitation in health and physical well-being*

The ALJ determined that Claimant had no limitation in health and physical well-being. R. at 39. This domain considers the cumulative physical effects of physical and/or mental impairments and their associated treatments or therapies on a child's health and functioning. 20 C.F.R. § 416.926a(l). "When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause 'extreme'

27

limitation in your functioning, your will generally have an impairment(s) that 'meets' or 'medically equals' a listing." 20 C.F.R. § 416.926a(l).

Here, nothing in the record indicates that Claimant had suffered any health concerns other than being diagnosed with ADHD, BIF, a reading disorder, and a speech disorder. R. at 39. While Claimant must continue to take his prescribed medications, there is no evidence of any severe symptoms as a result of this medication. R. at 39. Claimant was generally well-nourished and well-groomed. R. at 39. Furthermore, the medical record was absent any indication of health concerns. As such, substantial evidence supports the ALJ's determination that Claimant experienced no limitation in this domain.

After a thorough review of the evidence and the ALJ's decision, the Court **FINDS** the ALJ's decision was supported by substantial evidence when considering only the evidence before the ALJ at the time the decision was rendered.

## C. Substantial Evidence Supports the ALJ's Decision Even in Light of the Additional Evidence Submitted by Plaintiff

The Court next considers whether the ALJ's decision is supported by substantial evidence even in light of the Genesis Report, which was submitted by Plaintiff as part of her appeal to the Appeals Council. Notably, portions of the Genesis Report are dependent on Plaintiff's own subjective statements and rely on testing and questionnaires completed by Plaintiff. The statements made by Plaintiff are largely a recitation of her prior statements regarding Claimant's limitations and behavior, and the ALJ previously determined Plaintiff's impressions of Claimant were not entirely consistent with the objective findings based on Claimant's medical and academic records, which the Court accounts for in its consideration of the Genesis Report. Second, the independent, objective findings of the Genesis Report are largely consistent with the ALJ's

original determination and the evidence upon which he relied. Therefore, even in light of this additional evidence, substantial evidence supports the ALJ's Decision.

As before, the Court reviews the evidence and the ALJ's decision, with a focus on the six functional domains. *See* 20 C.F.R. § 416.926a(a)(1).

*1. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in acquiring and using information*

The Genesis Report includes a standardized assessment administered to Claimant to assess his general thinking and reasoning skills. R. at 12. This test, the *Wechsler Intelligence Scale for Children, Fifth Edition* ("WISC-V"), assessed Claimant's verbal comprehension, visual spatial, fluid reasoning, working memory, and processing speed. R. at 12. Claimant's verbal comprehension and working memory scores were in the "borderline range," while his visual spatial, fluid reasoning, and processing speeds were found to be "average." R. at 12. Overall, Claimant's intellectual ability was found to be within the "low average range of cognitive function." R. at 12. This is consistent with the evidence relied upon by the ALJ in finding that Claimant had a less than marked limitation in acquiring and using information, which shows that Claimant had only a slight problem speaking orally, was a "hard worker" in school, was an "engaged" reader. R. at 33.

*2. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in attending and completing tasks*

The Genesis Report contains the results from the CPT-3 test, a computer-assisted continuous performance measure designed to identify symptoms of ADHD. R. at 12. The results of this test indicated Claimant's average performance with the use of psychotropic medication on the day of the assessment. R. at 12. Plaintiff also completed the Behavior Assessment System for Children ("BASC-3") on behalf of Claimant. R. at 12. Plaintiff reported to the psychologists that

Claimant sometimes "is unable to slow down, acts out of control, and almost always acts without thinking." R. at 12.  Plaintiff also reported that Claimant has difficulties maintaining the necessary levels of attention, has a short attention span, is easily distracted, and has trouble concentrating. R. at 12.  Despite Plaintiff's reports, the Genesis Report concluded that Claimant's diagnosis of ADHD was maintained adequately and considered managed through medication.  R. at 12. Plaintiff's reports to the Genesis psychologists are similar to those discounted by the ALJ.  R. at 31.  However, the objective findings are consistent with the evidence presented to the ALJ and upon which the ALJ relied in determining that Claimant had less than marked limitations in attending and completing tasks, which demonstrated that Claimant did not focus well, had difficulty carrying out single- and multi-step instructions and work at a reasonable pace, and at times became frustrated and required encouragement in order to finish a task.  R. at 34.

### 3. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in interacting and relating with others

To assist the psychologists, Plaintiff completed the BASC-3 and stated that Claimant engages in "elevated aggressive behavior and clinical level rule-breaking behaviors."  R. at 13.  In particular, Plaintiff reported that Claimant occasionally "manipulates others, hits other children, argues when denied his way, is overly aggressive, gets into trouble, steals, and often disobeys." R. at 13.  Plaintiff further reported that Claimant had trouble making friends and was sometimes unwilling to participate in group activities.  Plaintiff's responses to the Childhood Autism Rating Scale test ("CARS-2") included her concerns regarding Claimant's communication abilities.  R. at 13.  In particular, Plaintiff reported that Claimant "imitates sounds, words, and movements from others," that his speech can sometimes be overly formal, and that he has difficulty communicating with others.  R. at 13.  Plaintiff's reports to the Genesis psychologists are similar to those discounted by the ALJ.  R. at 31.

To further assess Claimant's Autism Spectrum Disorder symptoms, the ADOS-2, an observation-style assessment, was administered to Claimant. R. at 13. Claimant was "observed to be verbal throughout the assessment, using complex sentences in a largely correct fashion." R. at 14. The Genesis Report noted that Claimant did not offer spontaneous information regarding his own thoughts or experiences, nor did he ask the examiner about her own thoughts or experiences. R. at 14. In fact, the ADOS-2 found that Claimant was able to report on both routine and non-routine events with only moderate direction from the examiner. R. at 14. The test indicated that conversation with Claimant was reciprocal, though topics were not always sustained. R. at 14. In terms of reciprocal social interaction, the ADOS-2 results indicated that Claimant had positive social responses but with decreased reciprocal social communication compared with similar-aged peers. R. at 14. Claimant was found to have persistent deficits in social communication and developing and understanding social relationships. R. at 14. For these reasons, Claimant was found to meet the criteria for Autism Spectrum Disorder, Level 1.[5] R. at 14. Finally, the *Vineland-3* assessment found that Claimant's communication skills and socialization abilities are in the Moderately Low Range. R. at 13.

Taken together, these findings are consistent with the evidence relied upon by the ALJ in concluding that Claimant had less than marked limitations interacting and relating with others, which shows that Claimant had difficulty helping himself and cooperating with others to take care of his personal needs, occasionally defecated on himself and smeared it on himself or on walls,

---

[5] Plaintiff asserts that ASD is not a "new impairment" for Claimant, but rather is "simply a summation of his previously diagnosed ADHD, borderline intellectual disorder, reading and speech disorder." ECF No. 18 at 2. Plaintiff further contends that the Genesis Report and ASD diagnosis were "merely a formality" in arriving at a full diagnosis. *Id.* Notably, the identification or diagnosis which simply serves to put a label on symptoms considered by the ALJ in his decision is cumulative and therefore does not alone constitute "new evidence" requiring remand. *Parsons v. Berryhill*, No. 2:16cv743, 2018 U.S. Dist. LEXIS 53209, at *52-53 (E.D. Va. Jan. 22, 2018). As such, even in considering Plaintiff's additional evidence, the fact the Claimant received a formal diagnosis of ASD has no bearing on whether the ALJ's decision is supported by substantial evidence.

and had difficulty expressing his thoughts and needed to be reminded to wait his turn in a large group setting, but was a "sweet boy" who made friends easily, was kind to his peers, was an outstanding role model for others, took correction well, and had good functional communication skills. R. at 35-36.

*4. Substantial evidence supports the ALJ's determination that Claimant had no limitation in moving about and manipulating objects*

According to Plaintiff's completion of the *Vineland-3*, a standardized measure of adaptive behavior, Claimant's motor skills, which includes his gross and fine motor abilities, are within the "adequate" range. R. at 13. In fact, the Genesis Report noted that Claimant's motor skills score was considered a "relative strength compared to his other scores." R. at 13. However, this assessment of Claimant's abilities was primarily based on Plaintiff's own report of Claimant's behavior. Because the ALJ afforded Plaintiff's statements little weight, these test results, largely reliant on Plaintiff's own statements, would presumably also be given less weight. There was no independent assessment or test conducted to measure Claimant's physical abilities involving moving about and manipulating objects included in the report. Therefore, substantial evidence supports the ALJ's determination that Claimant had no limitation in this domain.

*5. Substantial evidence supports the ALJ's determination that Claimant had a less than marked limitation in caring for himself*

Results of the *Vineland-3* assessment completed by Plaintiff determined that Claimant's daily living skills, which included his performance of the practical, everyday tasks of living that are age appropriate, were in the "low range." R. at 13. However, this assessment was based primarily on Plaintiff's own statements of Claimant's behavior, which mirror those made before the ALJ. R. at 13. Claimant's motor skills were found to be within the adequate range. R. at 13. There was no objective assessment of Claimant's ability to care for himself by the Genesis

32

psychologists.  As such, there is substantial evidence to support the ALJ's finding that Claimant had a less than marked limitation in caring for himself.

### 6. Substantial evidence supports the ALJ's determination that Claimant had no limitation in health and physical well-being

The Genesis Report does not discuss Claimant's health and physical well-being. Therefore, the ALJ's finding in this domain would be unaffected by this additional evidence.  As such, substantial evidence remains in support of the ALJ's finding that Claimant had no limitation in health and physical well-being.

## D. Conclusion

The Court **FINDS** there is substantial evidence to support the ALJ's decision based on the evidence before the ALJ.  The Court further **FINDS** that the Genesis Report, submitted after the ALJ's decision, is largely consistent with the ALJ's findings, and as such, even in light of this additional evidence, the ALJ's decision is supported by substantial evidence.

## VII. RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 12, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VIII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen (14) days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of

Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C.  § 636(b)(1); Fed.  R.  Civ.  P.  72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S.  140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S.  1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S.  1208 (1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to *pro se* Plaintiff and forward a copy of the same to counsel for the Commissioner.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
June 18, 2019

34